USDC IN/ND case 1:22-cv-00221-HAB-SLC   document 8   filed 06/01/22   page 1 of 17
02D02-2206-PL-000166
USDC IN/ND case 1:22-cv-00221   document 1-1   filed 07/06/22   page 2 of 18

Filed: 6/1/2022 11:45 AM
Clerk
Allen Superior Court 2   Allen County, Indiana
BB

# INDIANA COMMERCIAL COURT

| STATE OF INDIANA | ) | IN THE ALLEN SUPERIOR COURT |
|---|---|---|
| | ) SS: | |
| COUNTY OF ALLEN | ) | CAUSE NO. |

| JANE DOE | ) |
|---|---|
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| NETFLIX, INC., NETFLIX | ) |
| WORLDWIDE ENTERTAINMENT, LLC, | ) |
| and BLUMHOUSE PRODUCTIONS, LLC | ) |
| | ) |
| Defendants. | ) |

### COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND JURY DEMAND

COMES NOW, Plaintiff, Jane Doe ("Plaintiff"), by counsel, Burt, Blee, Dixon, Sutton & Bloom, LLP, and for her Complaint against the Defendants, Netflix, Inc., Netflix Worldwide Entertainment, LLC, and Blumhouse Productions, LLC, hereby alleges and states as follows:

### PARTIES

1. Plaintiff is a competent individual over the age of eighteen (18) and resides in Allen County, Indiana.

2. Defendant, Netflix, Inc., is a Delaware Corporation with a principal place of business in California. Netflix, Inc.'s registered agent is The

Corporation Trust Company at 1209 Orange Street, Wilmington, Delaware 19801.

3.  Defendant, Netflix Worldwide Entertainment, LLC, is a Delaware LLC with a principal place of business in California. Netflix Worldwide Entertainment, LLC's registered agent is The Corporation Trust Company at 1209 Orange Street, Wilmington, Delaware 19801.

4.  Together, Defendants Netflix, Inc. and Netflix Worldwide Entertainment, LLC are referred to herein as Netflix ("Netflix").

5.  Defendant, Blumhouse Productions, LLC ("Blumhouse") is a Delaware LLC with a principal place of business in California. Blumhouse's registered agent is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

## VENUE AND JURISDICTION

6.  This Court has jurisdiction over this matter and the parties hereto.

7.  Venue is proper in this Court pursuant to the Indiana Rules of Trial Procedure, Trial Rule 75(A).

8.  Venue is preferred in this Court pursuant to the Indiana Rules of Trial Procedure, Trial Rule 75(A)(10).

## JURISDICTIONAL ALLEGATIONS

9.  Defendants expressly aim their conduct described herein at

Indiana.

10. Netflix's website touts "Our Father" as the "story of Donald Cline, an Indianapolis fertility doctor who secretly used his own sperm to impregnate countless victims" and admits that the filming of this documentary occurred in Indiana.

11. Blumhouse's official Twitter account offered a tweet on April 14, 2022, advertising the "Our Father" documentary "on @Netflix" providing a link to the documentary, and stating: "the unimaginable rocked this small town…" The imbedded video clip following the text identifies the "small town" as Indianapolis.

12. Blumhouse and Netflix personnel repeatedly and continuously traveled to Indiana and Indianapolis to create the documentary at issue in this case.

13. The documentary at issue in this case is about Indiana.

14. The documentary at issue in this case consists principally of video footage from the State of Indiana.

15. The majority of the individuals appearing in the documentary at issue in this case are residents of the State of Indiana.

16. The documentary at issue in this case repeatedly mentions Indiana.

17. On information and belief, Netflix has at least One Million (1,000,000) viewers in the State of Indiana.

18. On information and belief, at least Two Hundred Fifty Thousand (250,000) Indiana residents have viewed the "Our Father" documentary.

19. Defendants knowingly and intentionally published the private information of Plaintiff to hundreds of thousands of Indiana residents.

20. At all material times, Defendants knew that the Plaintiff was and is a resident of Indiana.

21. Defendants directed relevant communications and conduct to Plaintiff while she was a resident of Indiana, while she was physically present in Indiana, and with knowledge of these facts.

22. Plaintiff felt the harm alleged herein in the State of Indiana, is a resident of Indiana, and the reputational harm alleged herein damaged her reputation among her peers in this state.

23. Plaintiff's personal property rights appropriated by Defendants are situated in Indiana.

## FACTUAL ALLEGATIONS

24. During the 1970's and 80's, a fertility specialist in Indiana named Dr. Donald Cline ("Dr. Cline"), inseminated dozens of patients with his own sperm, without their knowledge or consent.

25. These women were told by Dr. Cline that the donors he used were medical residents and that he used each donor for only Three (3) successful pregnancies.

26. It is estimated that these women bore at least Eighty (87) secret children of Dr. Cline without knowing that Dr. Cline was their true biological father (the "Secret Children").

27. In 2014, some of the Secret Children began taking at-home DNA tests through an online service.

28. These Secret Children were alerted that they had several biological half siblings.

29. These Secret Children discovered that they shared a biological father, Dr. Cline.

30. Eventually, Dr. Cline pled guilty to Two (2) counts of Obstruction of Justice.

31. As a result of these circumstances, the Indiana Legislature passed a "fertility fraud" statute, which includes felony consequences.

32. In 2016, Plaintiff took a DNA test.

33. The DNA test revealed that Plaintiff had several biological half siblings.

34. As a result of the DNA test, Plaintiff discovered that she was one

of Dr. Cline's Secret Children.

35. Neither Plaintiff nor her family knew that Plaintiff was one of the Secret Children until after the DNA test.

36. The fact that Plaintiff is a Secret Child was kept private.

37. Plaintiff held this fact in close confidence.

38. Some of Plaintiff's biological half siblings were able to see her identity through a DNA website.

39. This information was kept secured to a limited number of persons, mainly, certain of the biological half siblings.

40. In approximately 2020, Defendants began creating a documentary entitled "Our Father".

41. The documentary contains interviews with some of the Secret Children and their parents, as well as others close to the situation, and it chronicles the [half] siblings' path to uncovering the truth of their biological parentage, and spotlights their fear and resolve as they fail to see Dr. Cline answer his crimes in court.

42. Defendants contacted many of the Secret Children.

43. Defendants offered these Secret Children the opportunity to discuss being on camera for the documentary and to submit photos.

44. Defendants made clear to these Secret Children that no Secret

Child would be identified in the documentary without his or her explicit consent.

45. During the course of the filming of the documentary, Defendants never contacted Plaintiff to obtain her permission for the use of her personality within the documentary.

46. Plaintiff never provided authorization or consent for Defendants to utilize her name, image, or likeness in any way.

47. Plaintiff never provided authorization or consent for Defendants to identify her as a Secret Child.

48. Plaintiff never provided authorization or consent to appear in the documentary in any fashion.

49. Based on information and belief, throughout the filming of this documentary, producer, Michael Petrella, wrote to a number of Secret Children stating: "I know that some of you were more comfortable than others being involved…you will not be identified (unless you have already given us explicit permission to do so)…"

50. Nonetheless, and despite the representations made, Defendants utilized the personality of Plaintiff.

51. On May 11, 2022, the documentary was released on the internet video streaming service "Netflix."

52. The "Netflix" service is owned and operated by Netflix.

53. The documentary was produced by Blumhouse.

54. Netflix and Blumhouse created the documentary.

55. Netflix and Blumhouse authored the documentary.

56. Netflix and Blumhouse approved the content of the documentary.

57. Netflix and Blumhouse published the documentary to the world.

58. Netflix and Blumhouse distributed the documentary to the world.

59. Netflix and Blumhouse profited from the documentary.

60. Netflix has more than Seventy Million (70,000,000) subscribers in the United States.

61. The documentary was listed as "Trending Now" on the "Netflix" service, was identified as a "Top 10" on the "Netflix" service, and was listed as the "#1 Movie" on the "Netflix" service.

62. The documentary was featured on the front page of the "Netflix" service.

63. On May 12, 2022, Jason Blum, the CEO of Blumhouse, issued a celebratory tweet stating, "Yeah baby. That's our movie!!! Number1!."

64. The tweet featured an image of the "Our Father" poster, with a large "1" superimposed under the heading "Top 10 Movies in the U.S. Today."

65. The documentary was viewed by millions of people in May 2022 alone.

66. This includes hundreds of thousands of Indiana residents.

67. The documentary identifies Plaintiff as a Secret Child by listing her name as a "match."

68. Plaintiff did not authorize Defendants to disclose her status as a Secret Child.

69. Defendants "blurred" the names and photographs of numerous Secret Children in the documentary.

70. Defendants did not afford this protection to Plaintiff.

71. Defendants displayed Plaintiff's name to the world, identifying her as a Secret Child.

72. Plaintiff did not know of Defendants disclosure of her identity as a Secret Child until May of 2022.

73. Defendants publication of Plaintiff's identity as a Secret Child has caused Plaintiff severe harm, including, but not limited to, reputational injury, distress, embarrassment, and emotional trauma.

74. On May 12, 2022, certain of the Secret Children, including Plaintiff by way of copy, e-mailed Blumhouse requesting that Blumhouse immediately blur personal identifying information of non-public siblings out of

the documentary as quickly as possible.

75. On May 20, 2022, Blumhouse responded: "Thank you very much for your email. We are reviewing your concerns and will respond shortly."

76. Also on May 20, 2022, Counsel for Plaintiff sent demand correspondence to Caroline Raufi, who is, based on information and belief, Chief Legal Counsel for Blumhouse, requiring that Blumhouse immediately blur out the use of Plaintiff's likeness from the documentary.

77. Despite said requests and demands, Defendants have failed and refused to take adequate steps with which to protect Plaintiff's identity.

78. To date, Defendants continue to publish Plaintiff's identity, disclosing her as a Secret Child.

79. The tag line on Blumhouse's Twitter account is "we make nightmares come true."



80. Blumhouse, in conjunction with Netflix, has succeeded in its efforts to make Plaintiff's nightmares come true.

### COUNT I – PUBLIC DISCLOSURE OF PRIVATE FACTS

81. Plaintiff hereby incorporates rhetorical paragraphs 1-80 of her Complaint as if fully set forth herein.

82. Defendants disclosed information of Plaintiff.

83. The information was private in nature.

84. The information was factually true.

85. The information was privately held.

86. The information was not open to public inspection and it was not already public.

87. Defendants' disclosure was made to the public.

88. Defendants' disclosure was to a large enough number of persons such that the matter is sure to become public knowledge.

89. Defendants' disclosure was highly offensive and would be considered highly offensive to a reasonable person.

90. Defendants' disclosure offends society's accepted, communal norms and social mores.

91. A reasonable person would feel justified in feeling seriously aggrieved by Defendants' disclosure.

92. The information disclosed was not of a legitimate public concern.

93. Plaintiff is not a voluntary public figure.

94. The information disclosed is not "news."

95. Plaintiff has been damaged by Defendants' disclosure.

WHEREFORE, the Plaintiff, Jane Doe, by counsel, Burt, Blee, Dixon, Sutton & Bloom, LLP, hereby respectfully requests that this Honorable Court enter Judgment in her favor and against the Defendants, Netflix, Inc., Netflix Worldwide Entertainment, LLC, and Blumhouse Productions, LLC, jointly

and severally, for any and all direct, incidental, and/or consequential damages arising out of the Defendants collective actions as alleged throughout this Complaint, punitive damages, the costs of this action, reasonable attorney's fees incurred, and for all other relief that this Court may deem to be just and proper in the premises.

## COUNT II-NEGLIGENCE

96. Plaintiff hereby reincorporates rhetorical paragraphs 1-95 of her Complaint as if fully set forth herein.

97. The Defendants owed a duty to Plaintiff.

98. The Defendants breached that duty as a result of the actions complained of herein.

99. As a result of that breach, Plaintiff was injured.

100. Plaintiff's injuries were proximately caused by the breach of that duty set forth herein by the Defendants.

101. Plaintiff is entitled to recovery of damages incurred as a result of Defendants' collective breach of their duties owed.

102. The conduct described herein as set forth and alleged throughout this Complaint warrants the imposition of punitive damages.

WHEREFORE, the Plaintiff, Jane Doe, by counsel, Burt, Blee, Dixon, Sutton & Bloom, LLP, hereby respectfully requests that this Honorable Court

enter Judgment in her favor and against the Defendants, Netflix, Inc., Netflix Worldwide Entertainment, LLC, and Blumhouse Productions, LLC, jointly and severally, for any and all direct, incidental, and/or consequential damages arising out of the Defendants collective actions as alleged throughout this Complaint, punitive damages, the costs of this action, reasonable attorney's fees incurred, and for all other relief that this Court may deem to be just and proper in the premises.

### COUNT III-UNJUST ENRICHMENT

103. Plaintiff hereby reincorporates rhetorical paragraphs 1-102 of her Complaint as if fully set forth herein.

104. Defendants have received immeasurable benefit at the cost of Plaintiff by and through the utilization of her name and personality through the production and distribution of their documentary "Our Father."

105. Plaintiff did not authorize the use of her name and/or likeness.

106. Defendants have profited off the name of Plaintiff.

107. Allowing Defendants to retain the benefit they have received through the wrongful use of Plaintiff's personality would be unjust.

WHEREFORE, the Plaintiff, Jane Doe, by counsel, Burt, Blee, Dixon, Sutton & Bloom, LLP, hereby respectfully requests that this Honorable Court enter Judgment in her favor and against the Defendants, Netflix, Inc., Netflix

Worldwide Entertainment, LLC, and Blumhouse Productions, LLC, jointly and severally, for any and all direct, incidental, and/or consequential damages arising out of the Defendants collective actions as alleged throughout this Complaint, punitive damages, the costs of this action, reasonable attorney's fees incurred, and for all other relief that this Court may deem to be just and proper in the premises.

## COUNT VI-INJUNCTIVE RELIEF

108. Plaintiff hereby reincorporates rhetorical paragraphs 1-107 of her Complaint as if fully set forth herein.

109. As alleged and set forth throughout this Complaint, Defendants have used and published Plaintiff's name to the world.

110. While the millions of viewers of Netflix cannot unsee what the Defendants have done to Plaintiff, by and through injunctive relief, perhaps Plaintiff can protect her private and secret life from viewers who have not yet viewed the documentary "Our Father."

111. As is evidenced by the Defendants failure to promptly act and respond to the demand made by Plaintiff to blur out her name, Defendants have failed and refused to do so.

112. Equitable and injunctive relief is necessary to force action by Defendants in the form of removing her name from the documentary "Our

Father."

113. The continued production and distribution of a documentary utilizing an individual's identity and implicating that identity in the scandalous story set forth in the documentary "Our Father" will cause substantial and irreparable harm to Plaintiff.

114. Plaintiff seeks injunctive relief directing Defendants to remove her name from the documentary "Our Father."

115. Plaintiff has no other adequate remedy at law, and the continued actions/inactions of Defendants would cause irreparable harm to Plaintiff.

116. Plaintiff is likely to succeed on the merits of her claim.

117. The harm incurred and potential for future harm to Plaintiff in the event that the request for injunctive relief is not provided outweighs the potential harm to Defendants in the event that injunctive relief is denied.

118. The injunctive relief requested by Plaintiff herein is more practical, efficient, and adequate than any remedies otherwise afforded by law.

WHEREFORE, the Plaintiff, Jane Doe, by counsel, Burt, Blee, Dixon, Sutton & Bloom, LLP, hereby respectfully requests that this Honorable Court enter an Order requiring Defendants, Netflix, Inc., Netflix Worldwide Entertainment, LLC, and Blumhouse Productions, LLC, to remove her name

from the documentary "Our Father", for reasonable attorney's fees, for costs, and for all other relief that this Court may deem to be just and proper in the premises.

## JURY DEMAND

Plaintiff, Jane Doe, by counsel, hereby respectfully requests that the above captioned matter be tried by a jury.

Respectfully submitted,

**BURT, BLEE, DIXON, SUTTON & BLOOM, LLP**

/s/ *Jared P. Baker*
Jeremy J. Grogg, #24206-02
Jared P. Baker, #31610-02
200 E. Main Street, Suite 1000
Fort Wayne, Indiana 46802
Phone: (260) 426-1300
jgrogg@burtblee.com
jbaker@burtblee.com
*Attorneys for Plaintiff*